**In the United States Bankruptcy Court
for the Southern District of Texas
Houston Division**

| | | |
|---|---|---|
| In re | § | |
| | § | Case No. 22-33581 |
| Joycare Therapy, LLC, | § | |
| | § | Chapter 11 Subpart V |
| Debtor | § | |

**Debtor's Fourth Amended Plan of Reorganization for
Small Business Under Subpart V Chapter 11**

Joycare Therapy, LLC ("Joycare" or the "Debtor") proposes this Fourth Amended Plan of Reorganization (the "Plan") pursuant to 11 U.S.C. §§ 1190.

## I.   Background

### A.  Description and History of the Debtor's Business

Joycare is a prescribed pediatric extended care center ("PPECC") licensed by the Texas Department of Health and Human Services.  Joycare is located at 6440 Sands Point Dr., Houston, TX 77074.  Joycare is the only licensed PPECC in Houston. Inside its 6,650-square foot free-standing leased building, Joycare provides care to medically fragile children. These children have need for constant care provided by nurses, licensed vocational nurses, and certified nursing assistants. The children are typically dropped off at the facility in the morning by their parents or by transportation provided by Joycare. After a day of receiving care, the children are then picked up by their parents or transported home by Joycare.

The result of this high care is profound for the children. In addition to receiving excellent medical care, the children receive socialization as they interact with other children and the staff. In addition, Joycare provides programming for the children, teaching them basic skills, including

supplementing what they may receive in schools. Joycare believes this care results in healthier children who develop faster than their peers who do not have access to PPECC services. In addition, the time away from their parents allow their parents to work. Without Joycare, parents with these medically fragile children will often not be able to work because they need to stay home for their child.  The services provided by Joycare have been very well received by parents with children at the facility, and by doctors and nurses.  Joycare wants to be able to continue to provide the services to children and parents in the Houston area.  This Plan provides the ability of Joycare to re-start operations under new ownership and provide the much needed services.

The Debtor has been operating since approximately October of 2017.  Joycare expended more than $1 million in renovating its facility, obtaining the PPECC license, marketing new services, and obtaining payor contracts with Medicaid payors.  Unfortunately, Joycare operated at a loss and could not sustain operations.  This Plan provides a basis to move forward.

Other than the potential value of leasehold improvements, the value of its assets are minimal. As of the Petition Date, Joycare had approximately the following assets:

| | |
|---|---|
| Cash | $20,000 or less |
| Accounts Receivable | Less than $5,000 in outstanding invoices and approximately $30,000 in receivables that are likely uncollectible, with a current value of $0. |
| PPECC License | License has no value because it cannot be sold, assigned or transferred. For an ongoing entity the value of the license is estimated at $10,000. |
| Miscellaneous | Miscellaneous toys, equipment, computers, etc, whose total value is less than $5,000, and a security deposit for its lease. |

Joycare values its assets at less than $50,000, in the aggregate.  The assets are subject to the liens and encumbrances of JPMorgan Bank as a Class 1 creditor.

Joycare has debts of approximately $2.3 million of which approximately $548,900 claims to be secured and the remaining amount is unsecured.

Joycare also has two owned vehicles, both encumbered by liens.

Joycare ceased providing services to children in September of 2022 and therefore did not have any incoming revenue prior to the Petition Date, other than the collection of prior billed services.  As described more fully below, Joycare has now re-started operations pursuant to the terms of the Management Agreement (as defined below).

The real estate lease of Joycare currently has less than 4 years left.  The leasehold improvements cannot be taken or removed by the Debtor and have no known value to the Debtor at this time.

## B.  Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to the Plan as Exhibit A.

The Debtor has no ability at this time to re-start operations or operate without the

Management Agreement (as defined below) and without funds from PHLLC (as defined below). The liquidation analysis is based on the projected recoveries and asset values **without the Management Agreement**.

This Plan, if confirmed, provides the opportunity for Joycare to continue operations under new ownership, with little to no debt after confirmation, and to provide very needed and useful services to children and their parents in the Houston area. While other companies may be starting similar operations in Houston, the time within which such companies may start will probably be much longer into the future. Further, this Plan does provide a return to creditors, including to the general unsecured creditors in Class 5.

### C.  The Management Agreement and Plan Sponsor

Immediately prior to the filing of this case (but explicitly subject to this Court's approval), Joycare and Pediatric Holdings, LLC ("PHLLC") entered into a management services agreement (the "Management Agreement") pursuant to which PHLLC agreed to fund and to manage the operations of the Debtor until confirmation of this Plan, unless terminated earlier pursuant to its terms. The Management Agreement was approved by an order of this Court dated December 23, 2022 [ECF. No. 48]. Although PHLLC will not be providing care to any patients during the case (that care will continue to be provided by the Debtor), the Management Agreement allowed the Debtor to open its doors again during this Case, and to provide much needed pediatric care in Houston. If the Plan is confirmed, the expenses incurred by PHLLC under the Management Agreement will be paid by Joycare in the ordinary course of business if and when it is able to do so. If the Plan is not confirmed, PHLLC will have an administrative claim for the costs it incurred

**Error! Unknown document property name.**

under the Management Agreement.  To date, PHLLC has funded approximately $180,000 for the operations of the Debtor.

PHLLC, which is associated with the business operating under the name Spark Pediatrics, is a sophisticated operator of thirteen (13) PPECC facilities in Florida.  PHLLC has the background, experience, knowledge and funding to be able to continue the operations of Joycare. PHLLC has already conducted extensive due diligence of the business of the Debtor and to date is satisfied with the results of its due diligence.  Unless some significant and currently unknown issues arise during the course of the case, PHLLC anticipates continuing to operate provide funding, and assume the equity in the Debtor.

PHLLC has reviewed the option of acquiring the assets of the business of the Debtor. However, one of the key assets is the licenses currently in the name of the Debtor.  The licenses to operate the Debtor are not transferrable.

Upon confirmation of this Plan, the Management Agreement would be terminated, and PHLLC would become the sole owner and operator of Joycare.

**D. Ability to Make Future Plan Payments and Operate Without Further Reorganization**

In order to confirm a plan, the Debtor must show that it will have enough cash over the life of the plan to make the required plan payments and operate the Debtor's business.  Because of the change in ownership upon confirmation, the ability of PHLLC to fund the operations of the Debtor, the background of PHLLC, and the projected income for the foreseeable future, the reorganized Debtor will have sufficient funds to operate its business going forward.  Because substantially all

of the payments to be made under the Plan will be made on the effective date of the Plan (or as soon thereafter as is practically reasonable), and because PHLLC has agreed to provide the funds for those payments, the Debtor will have sufficient funds to make all payments necessary under the Plan.

Attached hereto as Exhibit B are projections showing the expected performance of the Debtor over the next three years (the "Projections").  The Projections are based upon historical operations by Joycare (pre-petition and post-petition), and assume that the Plan as proposed is confirmed and that Joycare is operating outside of bankruptcy under new ownership.  Because the business will be run in the ordinary course of business following confirmation of this Plan, the payment of administrative expenses associated with the operation of the business (for example, payment of rent, payroll, or utilities) is included in the relevant line item in the Projections. Administrative expenses that are not incurred in the ordinary course of operating the business (for example, professional fees and statutory fees) have been included in the "Bankruptcy fees/payouts" line item.  Notably, pursuant to the terms of the Management Agreement, PHLLC has accrued a substantial administrative expense claim in this case.  Although the amount of that claim changes as costs are incurred and paid, as of the filing of this Plan PHLLC has an administrative claim in this case of approximately $180,000.  In accordance with the terms of Section 1129(a)(9) of the Bankruptcy Code, PHLLC has agreed that its administrative claim can be repaid under this Plan if and when funds become available for such payment.  As a result, that administrative claim does not have to be paid upon confirmation of the Plan, and will instead be paid as set forth in the Projections.

Notwithstanding the consensual payment terms for the PHLLC administrative claim, the Projections require the infusion of up to an additional $330,000 by PHLLC to operate the business. As a result, in connection with those Projections, the Debtor and PHLLC have negotiated a Support Agreement (the "Support Agreement"), pursuant to which PHLLC has agreed to provide the necessary funding to Joycare after confirmation of the Plan in accordance with the Projections. PHLLC and the Debtor have not yet entered into the Support Agreement (because they believe this Court would need to consider and approve such an agreement before doing so), but will do so immediately upon confirmation of the Plan.

Although the Projections show that the Debtor will turn cash flow positive after approximately one year, the gradual repayment of the PHLLC administrative claim results in the Debtor having no additional available cash throughout the first three years of the Plan. Specifically, the Projections show that the Debtor will have sufficient available funds to make all payments due under the Plan, including all administrative claims and the $50,000 payment due to general unsecured creditors, but that after making the payments set forth in this Plan, the Debtor will have no additional disposable income.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## II.    Summary of Plan

This Plan proposes to pay the Debtor's creditors from funding provided by PHLLC, or from the cash flow generated in the ordinary course of the Debtor's business after confirmation. To the extent necessary, PHLLC will provide funds for payments due pursuant to this Plan, which

---

will not include any payment at all to current equity holders.  The equity holders will not receive any funds.

This Plan provides for:  Four classes of secured claims;

One class of unsecured claims; and

One class of equity security holders.

Creditors holding allowed claims will receive distributions as set forth in this Plan.

This Plan provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to this Plan for information regarding the precise treatment of their claims.

The Debtor may prosecute claims against persons or entities that may owe money to the Debtor.  Any recoveries will remain with and be an asset of the reorganized Debtor.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## III.    Classification of Claims and Interests

| Class 1. | Class 1 consists of the loans by JPMorgan Chase Bank, N.A., which are secured by a lien on the assets of Joycare.  Joycare executed a loan for $100,000 (Credit Agreement) and a loan for $250,000 (Line of Credit Loan), each dated December 20, 2017 (collectively, the "Chase Loans").  The outstanding balances on the Chase Loans as of the Petition Date were approximately $53,810 and $167,304, respectively.  The Chase Loans are both secured by substantially all of the assets of the Debtor. |

| | |
|---|---|
| Class 2. | Class 2 consists of the claim of Ally Financial, to the extent allowed as a secured claim under § 506 of the Code. The claim of Ally Financial is secured by a lien on the Debtor's van (the "Van").  As of the Petition Date, the outstanding balance of the Class 2 claim was approximately $27,825. |
| Class 3. | Class 3 consists of the claim of Arvest Equipment Finance, to the extent allowed as a secured claim under § 506 of the Code. The claim of Arvest Equipment Finance is secured by a lien on the 2014 Chevrolet SAV 12 passenger bus (the "Bus"). |
| Class 4 | Class 4 consists of all other secured claims, including but not limited to the Economic Injury Disaster Loan provided to the Debtor by the Small Business Administration, Generators of Houston, Marlin Business Bank, and US Bank Equipment Finance, but only to the extent a security interest, if any, is perfected and only to the extent the collateral securing such claim has value. |
| Class 5 | Class 5 consists of all non-priority unsecured claims allowed under § 502 of the Code.  Exhibit C contains a list of the known unsecured creditors to be paid under the terms of this plan. The Debtor believes the aggregate amount of Class 5 claims is approximately $2.3 million. |
| Class 6 | Class 6 consists of the equity security holders of the Debtor. |

## IV.   Treatment of Administrative Expense Claims, Priority Tax Claims, and Court Fees

Under § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

### A. Administrative Expense Claims

Each holder of an allowed administrative expense claim allowed under § 503 of the Code will be paid in full in cash on the later of the Effective Date (as hereinafter defined), on the date such claim becomes an allowed claim, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.  PHLLC has agreed that its administrative claim will be paid

as and when Joycare has sufficient cash to make a payment, and pursuant to the terms of the Support Agreement, PHLLC has agreed to provide the Debtor with sufficient cash to pay its administrative claims (other than the claim of PHLLC), and will pay the operational costs of Joycare.  Joycare estimates that administrative expenses, other than the administrative claim due to PHLLC, will be less than $100,000.

Joycare will pay post-confirmation fees and expenses incurred by Baker & Associates on behalf of Joycare in the ordinary course of business without the need for Court approval of such fees and expenses.

<u>Payment to the Subchapter V Trustee</u> –  Melissa Haselden has been duly appointed as Subchapter V Trustee in this case ("Subchapter V Trustee").  The Debtor shall pay allowed Subchapter V Trustee fees and expenses.  If the Subchapter V Trustee does not timely receive tender of the payments set forth above, the Subchapter V Trustee shall send written notice by Regular Mail and by Certified Return Receipt Requested Mail, postage prepaid, to the Debtor and Counsel for the Debtor, and allow Debtor a 30-day period from the date of such written notice to cure such delinquent payments.  In the event Debtor fails to cure such delinquent payments within such 30-day period, the Subchapter V Trustee shall be allowed to take any and all steps necessary to exercise any and all rights available remedies under applicable law. Upon entry of a final order of discharge for the Debtor, this notice requirement shall terminate and the parties shall thereafter be governed by the notice provisions set forth under the laws of the State of Texas.

The subpart V Trustee fees will be paid on the later of the Effective Date and the promptly after the approval of the fees and expenses by the bankruptcy court.

**B.  Priority Tax Claims**

The Texas Workforce Commission filed a priority claim for $1,004.25.  The Debtor will

pay the claim by the Effective Date of the plan, without interest.

**C.  Statutory Fees**

All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective

Date have been paid or will be paid on the Effective Date.

**V.    Treatment of Claims and Interests Under the Plan**

Claims and interests will be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Chase Loan | Unimpaired | The Chase loan will be assumed by the reorganized Debtor and paid in the ordinary course.<br><br>As a result, Class 1 is not entitled to vote on the Plan, and is deemed to accept the Plan pursuant to Section 1126(f) of the Bankruptcy Code. |
| Class 2 – Ally Finance | Unimpaired | The Ally loan will be assumed by the reorganized Debtor and paid in the ordinary course.<br><br>As a result, Class 2 is not entitled to vote on the Plan, and is deemed to accept the Plan pursuant to Section 1126(f) of the Bankruptcy Code. |
| Class 3- Arvest Equipment Finance | Impaired | Joycare will surrender the collateral in full satisfaction of the loan to the Class 3 creditor. The delivery of the collateral to the Class 3 creditor shall be deemed to be complete and full satisfaction of any claims of the Class 3 creditor against the Debtor. |
| Class 4 – Other Secured Claims | Impaired | The collateral, if any, securing the claims of the Class 4 creditors has no value.  As a result, the claims of the |

---

*In re Joycare Therapy, LLC*
Debtor's Fourth Amended Plan of Reorganization                                                                                  11

| | | Class 4 creditors will be deemed to be unsecured, and will be treated as set forth below for unsecured creditors in Class 5.<br><br>Because Class 4 creditors are receiving no distribution on account of their class 4 claims (but will be treated as Class 5 creditors), Class 4 is not entitled to vote on the Plan and is deemed to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code. |
| Class 5 – Unsecured Creditors | Impaired | On the Effective Date, Joycare will fund an "Unsecured Creditors Payment Pool" in the amount of $50,000. Within five (5) business days of the later of (1) the Effective Date or (2) the date by which claims for rejected executory contracts must file a claim, the Subpart V Trustee (or the Debtor, if this Court appoints the Debtor as disbursing agent under the Plan) will pay all allowed Class 5 claims a pro rata amount of the Unsecured Creditors Payment Pool, calculated based on the aggregate amount of all allowed Class 5 claims.  A discharge under this plan shall discharge any unpaid amounts to creditors, including creditors in Class 5, or creditors with bi-furcated claims included in Class 5, or creditors with claims that are disputed, unliquidated, or contingent. |
| Class 6 – Equity Security Holders | Impaired | Current equity security holders will receive no value on account of their equity interests in the Debtor, and the current equity interests in the Debtor will be cancelled and of no further force or effect.  New equity interests in Joycare will be distributed to PHLLC, which will own 100% of Joycare following the Effective Date.<br><br>Because Class 6 creditors are receiving no distribution on account of their class 6 claims, Class 6 is not entitled to vote on the Plan and is deemed to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code. |

**Error! Unknown document property name.**

**Funds for Payment of Administrative Expense Claims and Unsecured Claims.**

Under the Management Agreement between Joycare and PHLLC, PHLLC has agreed to provide funds to the Debtor so that the Debtor may pay the operational expenses during the term of the Management Agreement.  In addition, pursuant to the terms of the Support Agreement and this Plan, PHLLC has agreed to specific terms regarding the repayment of its administrative expense claims, and will provide funds to the Debtor to (A) pay the administrative expense claims, (B) fund the Unsecured Creditors Payment Pool, and (C) support the Debtor's operations after confirmation.

**Provisions Applicable to Specific Claims**

Any and all claims of Huan Le, David Franklin, and Cottichia Burke will be deemed waived and released as of confirmation of the Plan.  To the extent any of those claims were secured, the security interest in connection therewith is hereby deemed released.

**Provisions Applicable to All Classes**

If the reorganized Debtor fails to timely make the required plan payments to any of the creditors, the reorganized Debtor will be considered to have defaulted under the Plan as to such creditor. If the reorganized Debtor defaults under the Plan as to a creditor, then such creditor may send a written notice of the default (a "Default Notice") to the reorganized Debtor and counsel for the Debtor by regular mail and by certified mail return receipt requested, postage prepaid. If the reorganized Debtor does not cure the default within 30 days after receiving the written Default Notice, such creditor with a default may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court.

**Bar Date and Payments**

In a chapter 11 case, creditors are required to file a proof of claim if the creditor is not listed by the debtor in its filed schedules, or is listed by the debtor in its filed schedules as disputed, contingent or unliquidated. The claims bar date in this case was February 10, 2023 for all creditors (other than a governmental unit), and is June 6, 2023 for governmental units.

**The Debtor will only pay creditors that are listed in the schedules of the Debtor (the "Schedules") as undisputed, non-contingent and liquidated, or that filed a proof of claim in this case by the applicable bar date, and such claim becomes an allowed claim. If a creditor is listed in the Schedules as disputed, contingent, or unliquidated, or is not listed in the Schedules at all, and does not file a proof of claim by the applicable bar date, then no payment will be made to such creditor and such claim will be discharged in its entirety.** Even if a creditor filed a claim, the Debtor may still dispute the claim. If a creditor is listed in the Schedules with a claim amount "Unknown," such claim shall be deemed to be for zero dollars, and such claim shall not receive any distribution under this Plan. A list of the creditors that were listed in the Schedules as undisputed, non-contingent and liquidated, and were listed with a known claim amount, or that filed a proof of claim by the applicable bar date, and therefore will be included in the payments in Class 5 as unsecured creditors, is attached as Exhibit C to the Plan.

**Provisions for Subpart V Chapter 11 Trustee**

**The Debtor requests consent to act as the disbursing agent if the plan is confirmed under section 1191(b). The Subpart V Trustee has agreed with such request.**

**Quarterly Financial Reporting.** Because all or substantially all of the payments due under this Plan will be made on or promptly after the Effective Date, the Debtor does not anticipate

needing to file any post-confirmation quarterly reports in this case.  However, for the avoidance of doubt, until the Debtor has completed all payments under this Plan, the reorganized Debtor shall file with the Court and provide to the Subchapter V Trustee no later than 21 days after the end of each quarter, post-confirmation quarterly financial reports (the "Quarterly Reports") for each quarter (or portion thereof) of the Plan term.  The Quarterly Reports shall: (i) be generated by the Debtor's management or an accounting or finance professional retained by the Debtor; and (ii) contain the information required by the U.S. Trustee's forms and office.

**Tax Returns**. Because all or substantially all of the payments due under this Plan will be made on or promptly after the Effective Date, the Debtor does not anticipate needing to file any post-confirmation tax returns with this Court.  However, for the avoidance of doubt, until the Debtor has completed all payments under this Plan, Debtor shall timely file all tax returns and make all tax payments and deposits, if any, when due. For each tax return that becomes due after entry of the order confirming the Plan but before the Plan is substantially consummated, Debtor shall, within fourteen (14) days of filing the return, provide the Subchapter V Trustee with a complete copy of the tax return, including all schedules and attachments.  Regardless of the occurrence of the Effective Date, however, the Debtor shall file tax returns for the tax year 2022 and for the shortened tax year in 2023 (up through the Effective Date), and provide the US Trustee's office with copies of each such return.

**Reorganized Debtor's Remittance**.  If the Debtor is not the disbursing agent, then the Debtor shall remit the to the Subchapter V Trustee by the Effective Date of the Plan the funds for the Unsecured Creditors Payment Pool and shall pay the other claims as set forth herein.  Payment

of administrative claims under this Plan shall be made in a manner that is mutually agreeable by and between the Debtor, administrative claimants, and Subchapter V Trustee.  The Reorganized Debtor shall promptly contact the Subchapter V Trustee regarding the disposition of any checks by Reorganized Debtor made payable to the Subchapter V Trustee but not negotiated.

**Distributions to Creditors.** Distributions to Class 5 allowed claims will be made in accordance with the payment calculations provided by the Debtor.  The Subpart V Trustee is not responsible for calculating or correcting the payment amounts due under the Plan.

**Disbursing Agent.**  The Debtor shall serve as the disbursing agent if the plan is confirmed under 1191(a).   In the event the plan is confirmed under 1191(b), the Debtor requests a waiver of the requirement that the Subchapter V Trustee serve as the disbursing agent.  In the event the waiver is not granted, the Subchapter V Trustee shall serve as disbursing agent for Class 5 creditors and shall be discharged upon completion of the final disbursement to Class 5 creditors.  Distributions to creditors will be based on the list of claims attached hereto as Exhibit C (and any allowed rejection claims filed in accordance with the terms hereof).  Within five (5) business days after the later of (1) the Effective Date and (2) the date by which claims for rejected executory contracts must be filed, the Debtor (or the Subpart V Trustee if the Debtor is not the disbursing agent) shall disburse to the Class 5 creditors the funds from the Unsecured Creditors Payment Pool according to this Plan (reserving for all disputed claims).  No funds will be available for any late filed claims.  Funds from any disbursement check where the check remains unnegotiated for more than 60 days, may be redistributed *pro rata* to other Class 5 unsecured creditors, as provided for under the Plan, or may be placed with this Court's unclaimed funds

register pursuant to 28 U.S.C. 2042, at the discretion of the Debtor (or the Subpart V Trustee if the Debtor is not the disbursing agent). The Reorganized Debtor will have the right to pursue the recovery of any disbursements made on account of a claim which is subsequently withdrawn and/or satisfied.

The Debtor will be deemed to have met its payment obligations under the Plan upon payment of the Unsecured Creditor Payment Pool.

The Subchapter V Trustee shall be discharged upon Substantial Consummation of the Plan unless the Subchapter V Trustee serves as Class V disbursing agent. If the latter occurs, the Subchapter V Trustee shall be discharged upon completion of the final disbursement to Class 5 creditors.

**Disbursement Reports**. Debtor (or the Subpart V Trustee if the Debtor is not the disbursing agent) shall provide all required reports to the United States Trustee for review, during the period in which the Debtor (or the Subpart V Trustee if the Debtor is not the disbursing agent) continues to make plan payments. Upon completion of all plan payments, the Debtor (or the Subpart V Trustee if the Debtor is not the disbursing agent) will submit the final report and final account of the administration of the estate to the United States Trustee for review pursuant to section 1183(b)(1). After review, the final report and account will be filed with the Court.

**Notices**. The Debtor (or the Subpart V Trustee if the Debtor is not the disbursing agent) may limit notice of any and all reports, document, pleading or other filing related to this case to those parties directly affected and to those interested parties which have filed a notice of

**Error! Unknown document property name.**

appearance or proofs of claim, as necessary. The Debtor (or the Subpart V Trustee if the Debtor is not the disbursing agent) shall be under no obligation to serve parties which are neither affected by any report, document, pleading or other filing or have made no appearance whatsoever before this Court

**Post-Confirmation Fees and Expenses of the Subchapter V Trustee**.  If the Debtor is not the disbursing agent, then the Subpart V Trustee will not be required to obtain Court approval for any post confirmation fees. Such post confirmation fees may be paid by the Debtor without obtaining court approval.

**Payments and Distributions on Disputed Claims**. Except as otherwise provided in the Plan, no partial Plan Payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. For purposes of clarity, each class's claimants will not be entitled to a distribution until all claims within the applicable class are final. Unless otherwise agreed to by the reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order. The provisions of this section are not intended to restrict payment of any unclassified claims which are not disputed.

**Subchapter V Trustee Obligations.**

**(a) Obligations Related to the Pursuit of Causes of Action**. The Subchapter V Trustee shall not have any right or obligation to pursue and/or manage the reorganized Debtor's pursuit of Causes

**Error! Unknown document property name.**

of Action. Rather, the pursuit and management of Causes of Action shall be coordinated by the reorganized Debtor and the attorney retained by the reorganized Debtor to pursue Causes of Action, if any.

**(b) Administration of the Estate.**  If the Debtor is not the disbursing agent, then the Subchapter V Trustee shall file all reports required by the United States Trustee in the manner prescribed by the United States Trustee Program. Upon discharge of the Subpart V Trustee, the Subpart V Trustee shall file her final report and seek a discharge of his duties as Subchapter V Trustee.

**Retention of Jurisdiction**. The Court retains jurisdiction for any and all matters that may come before the Court in the administration of the Plan and pursuant to the Order of Confirmation, specifically including, but not limited to, the jurisdiction to determine all objections that have heretofore been or may be filed to claims of creditors; to fix and award all compensation to parties who may be so entitled; to hear and determine all questions concerning the assets or property of the debtors, including any questions relating to any sums of money, services, or property due to the debtor; and determine all matters of any nature or type necessary or appropriate to carry out the Plan.

## VI.    Allowance and Disallowance of Claims

### A.  Disputed Claims

A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and, as to which, either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**Error! Unknown document property name.**

The Debtor reserves the right to dispute any claims filed by any creditors.

### B.  Distribution on a Disputed Claim

No distribution will be made on a disputed claim unless such claim is allowed by a final non-appealable order.  The Debtor will only pay on allowed claims.

### C.  Settlement of Disputed Claims

The Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## VII.   Provisions for Executory Contracts and Unexpired Leases

The Debtor assumes the following executory contracts and unexpired leases as of the Effective Date:

- Lease with Excelsior Realty I, LLC, for the lease of space at 6440 Sands Point Lane, Houston, Texas.  The cure amount for such assumption is $0.

- The following payor contracts with the Debtor:

  - Texas Children's Hospital Health Plan, Inc., with a cure amount of $0,

  - United Healthcare Community Plan of Texas, LLC, with a cure amount of $0,

  - Superior Healthplan, Inc., with a cure amount of $0,

  - Molina Healthcare of Texas, Inc., with a cure amount of $0,

  - Community Health Choice, Inc., with a cure amount of $0, and

  - Amerigroup Texas, Inc., with a cure amount of $0.

The Debtor rejects all other executory contracts.

Except for executory contracts and unexpired leases that have been assumed under this Plan or by order of the court before the Effective Date or under the preceding paragraph, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan, and any such claim, if allowed, shall be a Class 5 General Unsecured Non-Priority Claim, and shall be entitled to pro rata distributions as part of such class.

## VIII.   Governmental Matters

Nothing in this Plan or an order approving this plan, or related documents discharges, releases, precludes, or enjoins: (i) any obligation to the Centers for Medicare & Medicaid Services, Texas Health and Human Services Commission, or any other Medicaid agency as defined in 42 C.F.R. § 400.203 (each, a "Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Effective Date; (iii) any obligation to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property arising after the Effective Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtor. Nor shall anything in this Plan, any order, or related documents enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any of the foregoing.

**Error! Unknown document property name.**

Further, nothing in this Plan, an order confirming this plan or related documents authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Plan, an order confirming this plan or related documents shall relieve any entity from any obligation to address or comply with information requests or inquiries from any Governmental Unit. Nothing in this Plan, any order confirming this plan or related documents shall affect the right of any Governmental Unit to assert its recoupment rights or, except as set forth in Section X.G. hereof, divests any tribunal of jurisdiction it may have under police or regulatory law to interpret or to adjudicate any defense asserted under this Plan, any order confirming this plan, or related documents.

## IX.    Means for Implementation of the Plan

Debtor will retain the property of the bankruptcy estate.  In order to re-start operations, the Debtor has entered into the Management Agreement with PHLLC.  PHLLC will be responsible for the management of the operations of Joycare prior to the Effective Date.  As of the Effective Date, the equity of Joycare will be issued to PHLLC, and PHLLC shall be solely responsible for the operation of the business thereafter.  PHLLC has agreed to provide funds to Joycare for the payment of administrative claims and the funding of the Unsecured Creditors Payment Pool for payments to general unsecured creditors. After the Effective Date, the reorganized Debtor, under the ownership of PHLLC, shall be responsible for payments to the Class 1 (JPMorgan Chase) and Class 2 (Ally), in accordance with the terms of this Plan.  The Debtor may also elect to pay other amounts in advance.

After PHLLC becomes the owner of the equity, the following persons will be the officers of Joycare:  Donna Lodato will be the President, and David Cwiertnia will be the vice-president, treasurer, and secretary.  The business address for the individuals will be 6440 Sands Point Dr, Houston, Texas 77074.  Once Ms. Lodato retires, Mr. Jeff Soffen will become President of Joycare. Ms. Cottichia Burke, who was formerly an employee of Joycare, has been hired by PHLLC and will be working for PHLLC (and therefore indirectly for Joycare) after confirmation of the Plan.

## X.    General Provisions

### A.  Definitions and Rules of Construction

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

### B.  Effective Date

The effective date ("Effective Date") of this Plan is the date on which the confirmation order becomes a final order no longer subject to appeal. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

### C.  Substantial Consummation

Substantial Consummation shall occur when the payments to Class 5 have been made and administrative expenses (other than administrative claims owed to PHLLC) have been paid or reserved.

### D.  Severability

If any provision in this Plan is determined to be unenforceable, the determination will in

no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### E.   Binding Effect

The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### F.   Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### G.   Controlling Effect

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

### H.   Retention of Jurisdiction

The Bankruptcy Court will retain exclusive jurisdiction of the case after the confirmation date with respect to the parties to, and the subject matter of, this Plan and the claims, applications, orders, damages, and other events as described in the Plan.

## XI.   Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt: (i) imposed by this

Plan; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.  If the Plan is confirmed under § 1191(a), the Debtor will act as the disbursing agent under the Plan.

If the Debtor's Plan is confirmed under § 1191(b), the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, on the first date on which the Administrative Claims (other than claims of PHLLC), priority claims, and Unsecured Creditor Payment Pool have each been paid in full.  The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.  Unless this court approves the Debtor as the disbursing agent if the plan is confirmed under section 1191(b), the Subpart V Trustee shall continue with the duties for disbursement of funds to Class 5 creditors. After the disbursements for the Class 5 Creditors, the Subpart V Trustee may apply to be discharged of further duties.

Upon payment by the Debtor of the Administrative Claims, priority claims, and Unsecured Creditor Payment Pool have each been paid in full, the Debtor may apply for the entry of an order of discharge and upon confirmation that the payments have been made, the Bankruptcy Court shall enter an order of discharge under section 1192.

**Exhibits:**

    A.  Liquidation Analysis and Chart
    B.  Projections
    C.  List of Class 5 unsecured creditors to date

Dated: June 7, 2023

                    JOYCARE THERAPY, LLC

                    */s/ Huan Le*
                    By:_____
                    Huan Le, Manager

ATTORNEY FOR THE DEBTOR:
Reese Baker
TX Bar No. 01587700
Baker & Associates
950 Echo Lane, Ste. 300
Houston, Texas 77024
(713) 979-2279
(713) 869-9100 Fax

**Error! Unknown document property name.**